IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Wayne A. Cotton,**

      **Plaintiff,**

**v.**                                                             Case No. 12-CV-2731

**Costco Wholesale Corporation,**

      **Defendant.**

## MEMORANDUM & ORDER

Plaintiff Wayne A. Cotton filed this lawsuit against his employer Costco Wholesale Corporation ("Costco") asserting claims of racial harassment and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; and the Kansas Act Against Discrimination, K.S.A. § 44-1001 et seq. This matter is presently before the court on Costco's motion for summary judgment on all claims (doc. 60). As explained below, the motion is granted.

**I.**    **Facts**

The following facts are uncontroverted, stipulated in the pretrial order, or related in the light most favorable to plaintiff as the nonmoving party. Defendant Costco Wholesale Corporation ("Costco") operates "cash and carry" membership warehouse stores which sell merchandise to businesses and individual members. Costco operates a warehouse located in Overland Park, Kansas. Plaintiff Wayne Cotton is an African-American male who began his employment with Costco on November 30, 2010 as a Loss Prevention Clerk at the Overland

Park, Kansas warehouse. As a Loss Prevention Clerk, Mr. Cotton was responsible for walking the warehouse and perimeter up to 8 hours a day to monitor safety and security concerns, including detaining and interviewing shoplifters when warranted. At all times relevant to this lawsuit, Tom Sadler was the General Manager of the Overland Park, Kansas warehouse; Linda Swarts was the Administration Manager at the warehouse; and Kim Drew was the Regional Loss Prevention Manager for Costco.

Shortly after Mr. Cotton began his employment, Ms. Swarts observed, according to her testimony, that Mr. Cotton engaged in excessive socializing, particularly at the wireless kiosk and in the Major Sales department, and that he frequently talked on his personal cellular phone for lengthy periods of time. Mr. Cotton contends that he worked "undercover" and often acted like he was talking on his phone. He further contends that he spoke with his coworkers about Loss Prevention issues as per his job duties. Whatever the merit, it is undisputed that Ms. Swarts frequently reprimanded Mr. Cotton for socializing and using his personal cellular phone. Mr. Cotton complained to Mr. Sadler that he felt "harassed" by Ms. Swarts. Mr. Sadler spoke with Ms. Swarts and he testified that he handled the situation to his satisfaction. According to Mr. Cotton, Ms. Swarts and other managers "harassed" him about socializing, talking on his phone and related issues three to four times per month while he worked in Loss Prevention and they frequently "blew his cover" by talking to him about these issues.

During the first 90 days of his employment, Mr. Cotton observed a young woman putting unpaid candy and cookies into a bag and he alerted Mr. Sadler. Mr. Sadler spoke with the young woman and her mother. Mr. Sadler determined that the woman was mentally disabled and her mother apologized for the incident and paid for the merchandise. On another occasion,

2

an African-American cashier contacted Mr. Cotton about two members who appeared to be leaving the warehouse without scanning all their items for purchase. Mr. Cotton detained the members at the exit and discovered that the members had approximately $370 worth of items in their cart that had not been purchased. Mr. Cotton detained the members and contacted Mr. Sadler, whereupon the members became upset and referred to Mr. Cotton and the African-American cashier, in the presence of Mr. Sadler, as "black monkeys" and "niggers." Ultimately, Mr. Sadler determined that the members had not attempted to steal any merchandise and that the cashier had mistakenly failed to ring up all of the items in the members' shopping cart.

By the end of March 2011, Mr. Cotton did not apprehend any shoplifters in the warehouse other than the two incidents described above. According to Mr. Sadler, Costco management was still discovering empty product packages in the warehouse, indicating to him that "shrinkage of product" (losses from shoplifting) was nonetheless occurring. On March 31, 2011, Mr. Sadler met with Mr. Cotton and advised him that he had decided to eliminate the Loss Prevention Clerk position from the warehouse because he did not feel it was cost effective to continue having a Loss Prevention Clerk at the warehouse. Mr. Cotton contends that Mr. Sadler did not provide him with a reason as to why he was eliminating the position. In any event, Mr. Sadler advised Mr. Cotton that he would be moved to a position at the front-end of the warehouse with no loss in pay or benefits.

In early April 2011, Mr. Cotton began working as a cashier's assistant. One of the duties of a cashier's assistant is to retrieve shopping carts from the parking lot, but Mr. Cotton contends that the requirement was a form of harassment intended to humiliate Mr. Cotton. Shortly after his transfer, Mr. Cotton complained vigorously to Mr. Sadler about his perception

3

that Ms. Swarts was harassing him (including by requiring him to retrieve shopping carts) and he complained to Ms. Drew about the decision to eliminate the Loss Prevention position. Mr. Sadler and Ms. Drew agreed that Mr. Cotton should receive additional training in loss prevention. Mr. Sadler advised Mr. Cotton that he would remain in the Loss Prevention position and that he would be traveling to Chicago for additional training. On April 11, 2011, after Mr. Cotton was reinstated to the Loss Prevention position, he filed a charge of discrimination with the EEOC alleging that he was subjected to harassment and that he was demoted from his loss prevention position on the basis of his race.

Mr. Cotton received additional training over the course of three days in early May 2011. Nonetheless, Mr. Cotton did not apprehend any shoplifters from the time he was reinstated to the Loss Prevention position until July 2012. Mr. Cotton contends that this failure was directly related to management's interference with his job duties. In July 2012, Mr. Sadler again decided to eliminate the Loss Prevention position. According to Mr. Sadler, he did so because Mr. Cotton had not apprehended a single shoplifter in the prior 15 months; because there appeared to be no change in the amount of theft at the warehouse since Mr. Cotton had been hired; and because there were payroll budgetary concerns and a focus on trimming expenses. Mr. Cotton contends that the position was eliminated in light of Mr. Cotton's continued complaints to Mr. Sadler and others about race discrimination in the workplace. Costco never filled the position after removing Mr. Cotton from the position and to this day there is no Loss Prevention Clerk position at the warehouse in Overland Park.

Mr. Sadler offered Mr. Cotton the option of working the warehouse floor or working on the front end as a cashier assistant. Mr. Cotton chose the cashier assistant position and his pay

4

and benefits were unchanged. In August 2012, Mr. Cotton filed a second charge of discrimination alleging he was removed from the Loss Prevention job in July 2012 and placed into the cashier assistant position in retaliation for his first charge of discrimination. Coscto continues to employ Mr. Cotton in the cashier assistant position. He has not applied for any other positions in the warehouse and he has not signed up for supervisor training.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II. Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed.R.Civ.P. 56(a). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc.*, 726 F.3d at 1143 (quotation omitted). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id*. at 1143-44.

## III. Racial Harassment Claim

5

In the pretrial order, plaintiff contends that Costco subjected him to racial harassment sufficiently severe or pervasive to alter the terms and conditions of his employment. To survive summary judgment on a claim of racial harassment, Mr. Cotton must show "that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment, and that [he] was targeted for harassment because of [his] race." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012) (citation and quotation omitted). A plaintiff "does not make a showing of a pervasively hostile work environment by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a steady barrage of opprobrious racial comments." *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007).[1]

In support of his racial harassment claim, Mr. Cotton relies on the following allegedly race-based evidence: on one occasion, a customer at the warehouse referred to Mr. Cotton as a "nigger" and a "black monkey"; Bobby Wroe, an hourly employee and a department supervisor, told Mr. Cotton that he overheard Ms. Swarts telling other managers that she was "getting rid of that nigger and sending his black ass outside to push carts"; various Costco employees told Mr. Cotton that Ms. Swarts made comments to the effect of "the black guy thinks he's better than everyone else"; Ms. Swarts, on several occasions when walking through the electronics department, asked "Who turned the music to KPRS?", a station that plays hip-hop and R&B

---

[1] The court applies the same standards and burdens to plaintiff's § 1981 and KAAD claims as it applies to plaintiff's Title VII claims. *Crowe v. ADT Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011); *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 n.3 (10th Cir. 1997).

music, and remarked that Costco's customers "don't listen to that music"; and Ms. Swarts told Mr. Cotton that Indian people smell like onions.

Plaintiff has not come forward with evidence of race-based harassment sufficiently severe or pervasive to alter the terms and conditions of his employment with Costco. While it is undisputed that a Costco customer used racial epithets while referring to plaintiff, there is no evidence in the record suggesting that the conduct amounted to more than a one-time offensive utterance. *Compare Lockard v. Pizza Hut, Inc*., 162 F.3d 1062, 1072 (10th Cir. 1998) (sexual harassment of waitress by customers sufficient to create jury question where customers physically assaulted waitress on one occasion and, on several previous visits to the restaurant, had made sexually inappropriate comments to her). Tom Sadler testified he heard the customer make the comment, immediately told the customer that his language was "inappropriate" and that "we don't use language like that here." Mr. Cotton does not dispute this evidence, but believes that Costco somehow endorsed the customer's behavior by taking away the customer's membership. Regardless of how Mr. Cotton thinks Coscto should have reacted, the question remains whether the workplace is "permeated with discriminatory intimidation, ridicule and insult." *Holmes v. Utah, Dep't of Workforce Servs*., 483 F.3d 1057, 1065 (10th Cir. 2007). The incident identified by plaintiff fails to meet that standard, either independently or in combination with the remaining admissible evidence of harassment.

Mr. Cotton's testimony that Bobby Wroe told him that he overheard Ms. Swarts telling various managers that she was "getting rid of that nigger" and having his "black ass" push shopping carts is inadmissible hearsay and cannot be considered by the court on summary judgment. While Mr. Cotton contends that Ms. Swarts' statement is not offered to prove the

7

truth of the matter therein and instead is offered to prove Ms. Swarts' state of mind, he does not explain how Mr. Wroe's statement (a separate layer of hearsay in Mr. Cotton's testimony) is admissible. Indeed, Mr. Wroe's statement necessarily must be offered for the truth of the matter asserted—that is, that Mr. Wroe in fact overheard Ms. Swarts' comment—because if Mr. Wroe was not telling the truth, then his testimony is entirely irrelevant to plaintiff's claim. Further, Mr. Wroe's statement cannot be deemed nonhearsay under Federal Rule of Evidence 801(d)(2)(D) because there is no suggestion that his statement concerned a matter within the scope of his employment with Costco. Thus, even assuming that Ms. Swarts' statement is somehow admissible, Mr. Wroe's statement is not admissible.[2] The only statement from Mr. Wroe that is admissible is Mr. Wroe's sworn affidavit in which he avers that he never heard any Costco manager use the words "nigger, "black ass" or any other racial epithet. For the same reasons, Mr. Cotton's testimony that numerous (and unidentified) co-workers told him that Ms. Swarts made comments that "the black guy thinks he's better than everyone else" is not admissible because, even assuming that Ms. Swarts' purported statement was admissible, the statements of Mr. Cotton's coworkers constitute inadmissible hearsay.

The only purportedly "race-based" evidence that remains, then, is Ms. Swarts' remark that Costco's customers "don't listen to that music" when the stereos in the electronics department were playing music from KPRS and her remark that "Indian people smell like onions." These comments, taken with the customer incident described above, are not sufficient to rise to the level of severe or pervasive race-based harassment. While Mr. Cotton refers to the

---

[2] To the extent Mr. Cotton suggests that Mr. Wroe's statement is nonhearsay under Federal Rule of Evidence 801(d)(2)A), he has not demonstrated that Mr. Wroe constitutes a "party" in this lawsuit.

8

music on KPRS as "black music," there is no evidence that Ms. Swarts referred to the music as such. Ms. Swarts readily admits that she has asked employees in the electronics department to change the radio station playing on department stereos when she felt like the lyrics of the particular song playing were inappropriate for Costco's family-oriented members. According to Ms. Swarts, she made the request based on her belief that Costco's members do not enjoy listening to lyrics "that could be offensive to their children" and it is her responsibility to "create an environment for employees and members free of all harassment, including verbal." By way of example, Ms. Swarts recalled in her deposition that on one occasion when she directed employees to change the station, the song playing was called "Loosen Up My Buttons" by the Pussycat Dolls. Mr. Cotton does not dispute that Ms. Swarts had a business-based rationale for her request and even he admits in his deposition that he "didn't spend too much time dwelling" on these comments. Finally, Ms. Swarts flatly denies making the comment about Indian people. But even assuming she made the comment, Mr. Cotton is not Indian and Ms. Swarts' remark is not related in any respect to plaintiff's race. Assuming, then, that Ms. Swarts made the comment about Indian people, it is significantly less objectionable than harassment directed at Mr. Cotton himself. In the absence of evidence that Ms. Swarts' remarks about the music or Indian people were related to plaintiff's race, or even directed at plaintiff himself, these remarks fall far short of establishing a work environment permeated with discriminatory intimidation, ridicule or insult.

Mr. Cotton also comes forward with evidence of race-neutral harassment, but the race-based harassment identified by Mr. Cotton is insufficient to permit a jury to conclude that the race-neutral harassment was, in fact, the product of racial hostility. *See Herrera*, 474 F.3d at

9

682 n.7 (overtly racial harassment must be sufficient to link race-neutral harassment to demonstrated racial animus). Thus, because Mr. Cotton's evidence of race-based animus is so slight, the court finds that summary judgment is proper without consideration of Mr. Cotton's evidence of what he concedes is race-neutral conduct. *See Paige v. Donovan*, 511 Fed. Appx. 729, 734 (10th Cir. Feb. 19, 2013) (affirming grant of summary judgment to employer on racial harassment claim where "evidence with a racial component" was insufficient to warrant consideration of race-neutral evidence).

## V. Retaliation Claims

Title VII makes it unlawful for an employer to retaliate against an employee because he or she has opposed any practice made an unlawful employment practice by those statutes. 42 U.S.C. § 2000e–3(a). The court assesses plaintiff's retaliation claims under the *McDonnell Douglas* framework. *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012). To state a prima facie case for retaliation, plaintiff "must show (1) he engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action." *Id.* (quoting *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202 (10th Cir. 2008)). If plaintiff presents a prima facie case of retaliation, then Costco must respond with a legitimate, nonretaliatory reason for its employment actions. *Debord v. Mercy Health Sys. of Kansas, Inc.*, ___ F.3d ___, 2013 WL 6170983 (10th Cir. Nov. 26, 2013). Plaintiff, then, must show that Costco's stated reasons are pretextual. *Id.*

According to plaintiff, Costco retaliated against him for filing charges of discrimination and making informal internal complaints about discrimination in four respects: removing him from the Loss Prevention job and placing him in a Cashier Assistant position; giving him a November 2012 performance appraisal that identified numerous "areas of improvement;" subjecting plaintiff to constant verbal reprimands and general mistreatment; and refusing to transfer plaintiff out of the warehouse. Costco contends that summary judgment is warranted on each of plaintiff's retaliation claims because plaintiff cannot establish a prima facie case of retaliation and, in any event, cannot show that Costco's stated reasons for its actions are pretextual. As will be explained, the court concludes that, viewing the evidence in the light most favorable to plaintiff, no reasonable jury could return a verdict for plaintiff on his retaliation claims. Summary judgment is granted on each of Mr. Cotton's retaliation claims.

A.  *Materially Adverse Employment Actions*

In its motion for summary judgment, Costco contends that plaintiff cannot establish a prima facie case of retaliation with respect to any of his claims because he cannot establish that he suffered a "materially adverse" action. A "materially adverse" action is one that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). "This requires injury rising to a 'level of seriousness.'" *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012) (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1087 (10th Cir. 2007)). The employer's conduct need not affect the terms and conditions of employment, but the inquiry is objective; it is not based on a plaintiff's personal feelings. *Id*.

Because the uncontroverted evidence demonstrates that plaintiff did not suffer an adverse employment action with respect to his claims concerning verbal reprimands; the November 2012 performance appraisal; and Costco's refusal to transfer him out of the warehouse, summary judgment in favor of Costco is granted on these claims.[3]

1.  Verbal Reprimands

Plaintiff asserts that he was subjected to "constant" verbal reprimands and derogatory comments from his supervisors (primarily concerning talking with other employees or on his personal cell phone and directing him to push shopping carts) in retaliation for his complaints of discrimination. These actions, even taken in the aggregate, would not be materially adverse to a reasonable employee. Although the evidence reflects that plaintiff's supervisors verbally counseled him on numerous occasions, and perhaps gave him a "hard time" on other occasions, there is no evidence of any further discipline or any other result of the reprimands that would dissuade a reasonable employee from engaging in protected activity. *See Steele v. Kronke Sports Enterprises, LLC,* 264 Fed. Appx. 735, 746 (10th Cir. Feb. 11, 2008) (verbal warnings not materially adverse in the absence of evidence of further discipline or other adverse impact). Summary judgment in warranted on this claim.

---

[3] In light of this conclusion, the court declines to address Costco's argument that plaintiff has not established the requisite causation between Costco's actions and plaintiff's protected activity. Moreover, although Costco contends that its decision to remove plaintiff from the Loss Prevention job and place plaintiff in a Cashier Assistant position is not materially adverse, the court declines to address that argument in light of its decision that plaintiff has not established pretext with respect to that claim.

2. November 2012 Performance Appraisal

Plaintiff contends that his November 2012 performance appraisal—a document that is not included in the record—constitutes a materially adverse action because his supervisor at the time, Patrice Rivera, had noted several "areas of improvement" for Mr. Cotton in response to alleged pressure from management to do so. Whatever the document indicates, it does not rise to the level of a materially adverse employment action. Mr. Cotton received the appraisal nearly 4 months after his transfer to the Cashier Assistant position and there is no evidence that the appraisal jeopardized his employment status in any respect and no reasonable jury could conclude otherwise. He has not identified anything "harmful" or "serious" about the appraisal or any negative consequences that resulted (or that might result in the future) from the appraisal such as a reduction in pay or responsibilities or a demotion. In fact, Mr. Cotton, more than one year after receiving the appraisal, remains employed by Costco in the same position. Summary judgment on Mr. Cotton's retaliation claim is granted to the extent it is based on his performance appraisal. *See Fox v. Nicholson*, 304 Fed. Appx. 728, 733 (10th Cir. Dec. 23, 2008) (negative comments and low scores on performance evaluation, unaccompanied by other adverse action, did not establish materially adverse employment action).

3. Refusal to Transfer Out of Warehouse

Plaintiff next contends that Costco retaliated against plaintiff when it refused to transfer Mr. Cotton out of the warehouse to a different Costco location. Plaintiff was asked by his counsel during his deposition, in connection with a discussion about his damages, whether he asked "to be transferred to a different store." Plaintiff testified, "Many times, yes." He then

13

testified that a part-time Loss Prevention position in the Midtown location was available and that he spoke with the warehouse manager and Costco's regional Loss Prevention manager Kim Drew, but they both simply told him "no." He does not identify any other specific transfer requests that he made and the evidence does not establish that Costco's refusal to transfer Mr. Cotton to the part-time Loss Prevention job at the Midtown location was materially adverse. At most, Mr. Cotton has shown that he was denied the opportunity to transfer to a position that he subjectively preferred, which is insufficient as a matter of law to establish that he suffered a materially adverse action. *Semsroth v. City of Wichita*, 555 F.3d 1182, 1185-86 (10th Cir. 2009). In the absence of any evidence that a part-time Loss Prevention position was objectively preferable—in terms of pay, benefits or work load—to the full-time Cashier Assistant position held by Mr. Cotton, Mr. Cotton cannot state a claim of retaliation based on Costco's refusal to transfer him to the part-time Loss Prevention position. *Id*. at 1186. Summary judgment is granted on this claim.[4]

B.   *Pretext*

The court turns, then, to analyze Mr. Cotton's claim that Costco removed him from the Loss Prevention position and placed him in the Cashier Assistant position in retaliation for Mr. Cotton's complaints of discrimination. For purposes of Costco's motion for summary judgment,

---

[4] As Costco further indicates in its reply, Mr. Cotton has not preserved in the pretrial order any retaliation claims based on the November 2012 performance appraisal or the refusal to transfer Mr. Cotton out of the warehouse. Summary judgment is therefore independently warranted on the basis that Mr. Cotton has waived these claims. *See Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (claims, issues, defenses or theories of damages not included in the pretrial order are waived even if they appeared in the complaint).

the court assumes without deciding that Mr. Cotton can establish a prima facie case of retaliation with respect to this claim. Moreover, Mr. Cotton does not dispute that Costco has proffered legitimate, nonretaliatory reasons for removing him from the Loss Prevention position and placing him in the Cashier Assistant position. Rather, Mr. Cotton contends that Costco's proffered reasons are mere pretext for Costco's actual intention to punish him for complaining about discrimination in the workplace.

While evidence of pretext may take a variety of forms, plaintiff must produce evidence showing "weakness, implausibility, inconsistency, incoherency, or contradiction in the employer's stated reasons, such that a reasonable jury could find them unconvincing." *Debord v. Mercy Health System of Kansas, Inc.*, ___ F.3d ___, 2013 WL 6170983, at *10 (10th Cir. Nov. 26, 2013). In determining whether the proffered reason is pretextual, the court examines "the facts as they appear *to the person making the decision*, not as they appear to the plaintiff." *Id.* (emphasis in original). The court does not "ask whether the employer's proffered reasons were wise, fair or correct" but only whether "the employer honestly believed those reasons and acted in good faith upon those beliefs." *Id.*

According to Coscto, it removed Mr. Cotton from the Loss Prevention position because it eliminated the position entirely after determining that it made no financial sense to maintain the Loss Prevention position (in light of the fact that there was no decrease in inventory shrinkage since Mr. Cotton had been hired) and it placed Mr. Cotton in the Cashier Assistant position because he chose that position rather than a position working on the floor of the warehouse. In an effort to establish pretext with respect to his removal from the loss prevention position, Mr. Cotton urges that he apprehended shoplifters on two occasions but Costco decided not to

prosecute those individuals; that Costco interfered with his loss prevention efforts by constantly "blowing his cover" on the warehouse floor; and that Costco refused to repair the security camera and DVR system which reduced Mr. Cotton's chances of apprehending shoplifters. Mr. Cotton's arguments, however, do not render Costco's stated rationale unconvincing. There is no evidence that Costco experienced a decrease in inventory shrinkage during the time that Mr. Cotton was in the Loss Prevention position or that Mr. Cotton apprehended shoplifters at any rate that warranted keeping him in that position. Moreover, in light of the fact that Costco eliminated the position entirely and that there is currently no Loss Prevention position at the Overland Park warehouse, it cannot be disputed that Costco genuinely believes that it is simply not cost effective to keep an employee in that position. Even viewed in the light most favorable to Mr. Cotton, then, the evidence is insufficient to permit a reasonable jury to find in his favor.

With respect to Costco's decision to move Mr. Cotton to the Cashier Assistant position, Mr. Cotton surmises that Mr. Sadler was "tired of dealing" with him so he placed him in a "dead end position" and waited for him to quit. But Mr. Cotton does not dispute that he chose the Cashier Assistant position—a position with the same pay and benefits as the Loss Prevention position—over stocking shelves on the warehouse floor and over losing a job entirely. He further does not suggest that there was any other position in the warehouse that he would have preferred over the Cashier Assistant position other than the Loss Prevention position that was eliminated. He testified that he has not applied for any other positions in the warehouse and he has not signed up for supervisor training. Finally, he has no evidence that the Cashier Assistant position is a "dead end job" and, in fact, he testified that Costco has increased his responsibilities in that position to include responsibilities not typically handled by Cashier

Assistants. Based on the undisputed facts, no reasonable jury could conclude that Costco's stated reason for moving Mr. Cotton to the Cashier Assistant position is unworthy of belief.

For the foregoing reasons, the court grants summary judgment in favor of Costco on Mr. Cotton's retaliation claims.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Costco's motion for summary judgment on all claims (doc. 60) is granted.

**IT IS SO ORDERED.**

Dated this 3rd day of January, 2014, at Kansas City, Kansas.

                                              s/ John W. Lungstrum
                                              John W. Lungstrum
                                              United States District Judge